UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JTH TAX, LLC D/B/A LIBERTY TAX SERVICE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 21-747** |
| **ANGEL JOHNSON** | **SECTION: "S" (2)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion for Preliminary Injunction** (Rec. Doc. 4) filed by plaintiff, is **GRANTED**, and defendant, Angel Johnson, is **ORDERED** immediately to:

a. Cease breaching her non-competition and non-solicitation covenants contained within the franchise agreements for a period of **twenty months** from the date of this order;

b. Cease further use of any of Liberty's confidential information, including its customer lists, to breach actively the non-competition and non-solicitation covenants contained within the franchise agreements; and

c. Return all Liberty's confidential and proprietary operating, marketing, and advertising materials and any copies thereof, including, but not limited to, its Operations Manual, customer lists and other trade secrets.

### BACKGROUND

Plaintiff, JTH Tax, LLC d/b/a Liberty Tax Service ("Liberty") seeks injunctive relief against defendant, Angel Johnson, enjoining her from violating the parties' franchise agreement.

Liberty is a franchisor of income tax preparation service centers throughout the United

States, including Louisiana. In October 2014, Johnson entered into a franchise agreement with Liberty for territory in New Orleans, Louisiana (the "LA150 Franchise"). In December 2013 Johnson entered into a franchise agreement with Liberty for territory in Marrero, Louisiana (the "LA054 Franchise"). Both agreements included a term of five years.

Pursuant to the franchise agreements, Liberty provided Johnson with training in franchise operations, as well as marketing, advertising, sales, and business systems. Johnson also received access to and copies of Liberty's confidential and proprietary operating, marketing, and advertising materials, including its operations manual, customer lists, and other trade secrets, which are not available to the public or to anyone who is not part of Liberty's business system.

In exchange for Liberty's grant of the franchises, Johnson agreed to certain terms and conditions, which included a post-term covenant not to compete or solicit Liberty customers within 25 miles of the territory for two years following termination or expiration of the agreement. She also agreed that upon termination or expiration, she would deliver to Liberty the original and all copies of Liberty's confidential information, including, but not limited to, its customer lists, original and all copies of customer tax returns, files, and records, and the original and all copies of Liberty's operations manual.

On April 17, 2019, Liberty terminated the franchise agreements with Johnson. It is not disputed that following the termination, Johnson continued to operate out of the LA054 Franchise location in Marrero, Louisiana, under the name "Tax Service", using Liberty's customer lists and phone numbers to solicit customers for tax preparation services. It is also not disputed that Johnson did not return its confidential materials to Liberty. On April 13, 2021,

Liberty filed the instant complaint for injunctive relief and damages, alleging causes of action for breach of the franchise agreements, violation of the Defend Trade Secrets Act of 2016, common law conversion, and unfair competition. Liberty seeks money damages, as well as injunctive relief enjoining Johnson from further breaching her non-competition and non-solicitation covenants and from any further use of Liberty's confidential information. Liberty also seeks the immediate return of its confidential information and an accounting of Tax Service's revenues and profits for tax preparation and filings since April 17, 2019.

    At oral argument on the motion for preliminary injunction, the parties agreed on key points. First, it is undisputed that Johnson breached the franchise agreement by competing within the franchise territory, soliciting Liberty customers, and retaining Liberty's confidential materials. Second, the parties agree that under the choice of law provision in the franchise agreement, Virginia law applies to the dispute. As a result, the principal issue requiring resolution in connection with the request for injunctive relief is whether the two years Johnson prepared returns and retained documents in violation of the franchise agreement should be credited against the two-year restrictions incorporated in the franchise agreement.

    Liberty argues that Virginia law allows for the equitable extension of non-compete and non-solicitation covenants, and thus the restrictive covenants should be imposed for two years from the date of any injunctive order issued by the court. Johnson opposes, arguing that two years had elapsed since the termination of the franchise relationship as of April 17, 2021, and there is no need for an injunction. Johnson further argues that Liberty has not established that it will suffer irreparable harm in the absence of an injunction.

## DISCUSSION

*Legal Standard*

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

*Analysis of Factors for Preliminary Injunctive Relief*

**1. Likelihood of Success on the Merits**

In this case, it is undisputed that Johnson breached the franchise agreement, thus a likelihood of success on the merits is established.

**2. Irreparable Harm**

Defendant argues that plaintiff has not demonstrated irreparable harm, because any damages suffered by Liberty are compensable in money. However, since the termination of the franchise agreement, Johnson has operated a competing tax preparation service, servicing customers solicited through Liberty's advertising, trademarks, and name recognition. Johnson has failed to turn over all customer information, data, and prior tax returns. As one court has noted, this scenario results in Liberty being forced to compete for customers recruited by Liberty's proprietary information and business model, thereby "forc[ing] plaintiff to effectively compete against itself." Rec. Doc. 20-1, JTH Tax, Inc. v. Noor, No. 2:11cv22 (E.D. Va. May 11, 2011), p. 4. This state of affairs also jeopardizes Liberty's reputation, potentially affecting other franchisees. Accordingly, the court finds that Liberty has established irreparable harm.

### 3. Balance of Equities

To establish entitlement to injunctive relief, a litigant must also demonstrate that the "balance of equities tips in his favor." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). "This factor requires the court to balance the harm to the plaintiff's business interests as compared to the harm to the defendant's financial well-being." JTH Tax, Inc. v. Aime, 2016 WL 8674623, at *3 (E.D. Va. July 1, 2016) (internal quotations omitted), report and recommendation adopted, 2016 WL 4182743 (E.D. Va. Aug. 3, 2016). Johnson has harmed Liberty's business interests by breaching the franchise agreement, depriving Liberty of revenues, and potentially jeopardizing its reputation. In contrast, an injunction does not prevent Johnson from operating a tax preparation business outside the franchise territory, so long as she does not recruit prior Liberty customers. The equities in this case thus weigh in favor of Liberty.

### 4. The Public Interest

With regard to the public interest factor, an injunction enforcing the parties' agreement will discourage other franchise owners from violating their franchise agreements by signaling that franchisees may not benefit from their violation of non-competition and non-solicitation provisions, It also protects the interests of those who adhere to their franchise agreements. This factor, too, weighs in favor of granting Liberty the requested injunctive relief.

*Scope of injunctive relief*

Liberty requests that the two-year term of the non-competition and non-solicitation covenants be enforced prospectively from the date of the injunction, rather than from the date the franchise agreement was terminated, on April 17, 2021. Johnson contends that the court lacks

authority to extend the term of the covenants beyond the period the parties contractually agreed upon. In addressing this issue, both parties rely on Roanoke Eng'g Sales Co., Inc. v. Rosenbaum, 290 S.E.2d 882 (Va. 1982). In Rosenbaum, the Virginia Supreme Court upheld a covenant which required a corporate officer to refrain from competing for a three-year period following his discharge. Id. However, due to litigation delays that were no fault of the parties, the judgment enforcing the agreement was not entered until more than three years after the defendant's discharge. Id. at 885. The defendant thus argued that the enforceability of the covenant had become moot by the passage of time. Id. The Court disagreed, and found the covenant should be enforced from the date of the entry of the order because to hold otherwise would result in the plaintiff bearing the consequences of an unavoidable delay in securing a final judgment enforcing the agreement, rather than the defendant, who had been in continuous violation of the covenant since a month after his resignation. Id. at 886. Such a result would "reward the breach of contract, encourage protracted litigation, and provide an incentive to dilatory tactics." Id. However, because of the plaintiff's "six-month delay in filing suit, for which [the plaintiff] concedes its relief should be docked," the Court imposed an injunction that was six months less than the full term of the non-compete provision. Id. at 885-86.

    Plaintiff argues that Rosenbaum, which involved a corporate officer who was demoted to employee and then resigned as an employee prior to violating the agreement, is limited to the employment context, not to franchise agreements such as those at issue herein. However, numerous courts have cited Rosenbaum for the principle that an extension of a non-competition covenant in a franchise agreement was necessary to prevent a defendant from reaping the profits

6

of a breach, and have thus granted an extension of the protected period as an equitable remedy. For example, in JTH Tax, Inc. v. Boone, 2009 WL 10689518 (E.D. Va. May 7, 2009), six months after Liberty terminated the franchise agreement with defendant Boone, Boone began operating a competing tax preparation service under the name Triangle Tax Service. The court found an injunction was warranted, and held that it should run from the date of the final judgment, rather than the date the franchise agreements terminated. In so holding, the court noted that Boone had been violating his post-termination obligations for approximately ten months after Liberty terminated his contract, and "[a] defendant should not be allowed to benefit from his breaching of his duties." JTH Tax, Inc.,2009 WL 10689518, at *6; see also, JTH Tax, Inc. v. Noor, 2012 WL 4473252 (E.D. Va. Sept. 26, 2012) (collecting cases) ("Finding an extension of a non-compete covenant necessary to prevent a defendant from reaping the profits of a breach, numerous courts have granted an extension of the protected period, as a form of equitable relief.").

   In this case, it is undisputed that Johnson knowingly violated the terms of the non-compete agreement by impermissibly operating a tax preparation service within the franchise territory and soliciting Liberty customers, from the date of the termination of the franchise agreement until challenged by Liberty. Additionally, she has still not returned Liberty's confidential materials. To decline to extend the covenants in this case would permit Johnson to benefit from her violation of the covenants contained in the franchise agreement. Virginia law authorizes the court to commence an injunction from a date other than that provided for in the franchise agreement when equity requires it. Rosenbaum, 290 S.E.2d at 886. The court finds the

equities in this case require that the non-competition and non-solicitation covenants should be extended to run from entry of this order. However, because Liberty waited to file suit until April 13, 2020, four months after learning of the breach, the term is reduced by a commensurate period of time, to twenty months. Accordingly,

**IT IS HEREBY ORDERED** that the **Motion for Preliminary Injunction** (Rec. Doc. 4) filed by plaintiff, is **GRANTED**, and defendant, Angel Johnson, is **ORDERED** immediately to:

a. Cease breaching her non-competition and non-solicitation covenants contained within the franchise agreements for a period of **twenty months** from the date of this order;

b. Cease further use of any of Liberty's confidential information, including its customer lists, to breach actively the non-competition and non-solicitation covenants contained within the franchise agreements; and

c. Return all Liberty's confidential and proprietary operating, marketing, and advertising materials and any copies thereof, including, but not limited to, its Operations Manual, customer lists and other trade secrets.

New Orleans, Louisiana, this  10th   day of June, 2021.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**